UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**RICHARD COURVILLE**                          **DOCKET NO. 2:22-cv-06214**
                                                              **SECTION P**

**VERSUS**                                                      **JUDGE TERRY A. DOUGHTY**

**UNKNOWN OFFICERS, ET AL**                **MAGISTRATE JUDGE LEBLANC**

<u>**REPORT AND RECOMMENDATION**</u>

Before the court is a Motion to Dismiss filed by defendant, Officer Racca (sometimes herein "Racca"). Doc. 18. For the reasons below, it is recommended that the Motion to Dismiss be **GRANTED in part** and **DENIED in part**.

    I.      BACKGROUND

Plaintiff alleges that in October 2022 he was subjected to excessive force during a search procedure by Town of Iowa police officer, Officer Racca. In response, Officer Racca filed the instant Motion to Dismiss, arguing that plaintiff has not alleged sufficient facts to state a claim pursuant to 42 U.S.C. § 1983 against Officer Racca in his individual capacity that is plausible on its face and that he is entitled to qualified immunity. Moreover, Officer Racca asserts that plaintiff's claims against him in his official capacity are not pled with sufficient factual support to withstand a Rule 12(b)(6) motion to dismiss, and, as a result, plaintiff's complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

    II.      LAW AND ANALYSIS

    A.  FRCP Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal*

*Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted). A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted). However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"  *Taha v. William Marsh Rice Univ.,* 2012 U.S. Dist. LEXIS 62185, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).  On a motion to dismiss,

courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

**B.   42 U.S.C. § 1983**

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19 (1981).  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983.  The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and provide relief to victims if such deterrence fails.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); accord *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).  A § 1983 complainant must support his

claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

### C. Application

#### a. Official Capacity Claims

Plaintiff brings claims against Officer Racca in his official capacity, "while acting as a representative of the City of Iowa Police Department." *See* doc. 10, ¶ B. A suit against a government official in his official capacity is the same as a suit against the government entity of which he is an agent. *Burge v. Parish of St. Tammany*, 187 F. 3d 452, 466 (5th Cir. 1999). Thus, to determine whether a public official is liable under § 1983 in his official capacity, the Court looks to the jurisprudence discussing whether the municipality or local government entity is liable under § 1983. *Id.*

Municipal liability under § 1983 requires proof of three elements: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). A municipality cannot be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978). That is, "[a] municipality is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Valle v. City of Hous.*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Piotrowski v. City of Hous.,* 237 F.3d 567, 578 (5th Cir. 2001)). In this regard, an official policy must either be unconstitutional or have been adopted "with deliberate indifference to the known or obvious fact that such constitutional

violations would still result." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it 'must amount to an intentional choice, not merely an unintentionally negligent oversight.'" *James v. Harris Cty.*, 577 F.3d 612, 617–18 (5th Cir. 2009) (quoting *Rhyne v. Henderson Cty.,* 973 F.2d 386, 392 (5th Cir. 1992)). "These requirements **must not be diluted**, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (alteration in original) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 415 (1997)).

Again, "[a] municipality is liable under §1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir. 1984). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County Texas*, 981 F.2d 237, 245 (5th Cir. 1993) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 820-24 (1985)). Instead, the Fifth Circuit has defined "official policy" this way:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster*, 735 F.2d at 841.

Regarding practices and customs, "[a] pattern is tantamount to official policy when it is 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth,* 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster*, 735 F.2d at 841). "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Id*. (quoting *Webster*, 735 F.2d at 842). "It is thus clear that a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id*. at 850–51 (quoting *Piotrowski*, 237 F.3d at 582 (citations omitted)) "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id*. at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id*. (quoting *McConney v. City of Hous*., 863 F.2d 1180, 1184 (5th Cir. 1989)).

Officer Racca argues that plaintiff's complaint, and the amendments thereto, are devoid of any facts which would demonstrate liability of Officer Racca in his official capacity under § 1983. More specifically, Officer Racca argues in his Motion to Dismiss that plaintiff's complaint is completely void of any reference to any official policy or custom that was a moving force for the alleged constitutional violation, and thus fails those prongs with respect to the claims against him in his official capacity. Plaintiff does not rebut this argument in his Opposition to the instant Motion to Dismiss.

The Court concurs with Officer Racca's assertion that the instant complaint does not cite, reference, or mention any written policy or practice which could be used to impute liability to him.

Instead, plaintiff's complaint cited only the single instance of his own arrest as proof that Officer Racca should be liable under § 1983, which solitary occurrence the Fifth Circuit has already held is not enough to satisfy his burden at the pleading stage (see discussion, *supra*). Additionally, the instant complaint does not show any policy was promulgated or ratified by any policymaker of the municipality. Further to this point, the Fifth Circuit has held that "a city cannot be liable for an unwritten custom unless 'actual or constructive knowledge of such custom' is attributable to a city policy maker." *Pena v. City of Rio Grande City,* 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017)). Plaintiff's complaint makes no such allegations. As such, plaintiff's claims against Officer Racca in his official capacity should be dismissed for failure to state a claim upon which relief can be granted.

### b. Individual Capacity Claims

In addition to suing Officer Racca in his official capacity, Plaintiff is also suing him "personally." Officer Racca contends that Plaintiff has not alleged sufficient facts to state a § 1983 claim against him in his individual capacity that is plausible on its face and that he is entitled to qualified immunity.

Under Federal Rule of Civil Procedure 12(b)(6) a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.,* 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine,* 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, 935 F.3d 444, 2019 WL 3928715, at *5 (5th Cir. 2019), as revised (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." L*eatherman v. Tarrant Cnty. Narcotics Intelligence*

*and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

"[A]ll claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[P]laintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable" to plead an excessive force claim under § 1983. *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

To determine whether Officer Racca's actions were objectively reasonable, the analysis is an "objective (albeit fact-specific) question whether a reasonable officer could have believed" that he was violating the plaintiff's constitutional rights "under the circumstances of the complained of action." *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "To gauge the objective reasonableness of the force used by the law enforcement officer, the Court must balance the amount of force used against the need for force." *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir.2004) (internal quotation marks and citations omitted).

Plaintiff alleges that Officer Racca "trip whip slammed" him to the ground, because he "moved funny" while complying with a verbal order to retrieve property from his back pocket. Doc. 4, p. 3. As a result, he contends that he suffered numerous injuries to the face, eye socket, left shoulder, hip, knee and neck. *Id*. He allegedly continues to suffer today with numbness, tingling, shooting pain and loss of strength in his fingers. *Id*. The Court finds that Plaintiff has

satisfied the first step of the qualified immunity analysis; he has alleged facts that, if proven, constitute a violation of his clearly established Fourth Amendment right to be free from excessive force. *Graham*, 490 U.S. at 394.

The law was clearly established at the time of Plaintiff's arrest that "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Bush*, 513 F.3d at 502 (internal quotation marks omitted). However, during the arrest, "the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Id*. According to Plaintiff's version of the events, he was not resisting or failing to cooperate with Officer Racca and the body camera footage will establish that the use of force was unnecessary in the situation. Doc. 31, p. 1.

In his Amended Complaint, Plaintiff does concede, however, that he was charged with resisting a police officer[1]. Doc. 10, p. 5. Whether Plaintiff was resisting arrest is a critical factor in determining the reasonableness of Office Racca's conduct. If Plaintiff was actively resisting arrest, the force necessary to apprehend him naturally escalates. However, this degree of escalation is relative to the need for force in the situation. *See Peña v. City of Rio Grande City,* 879 F.3d 613, 619 (5th Cir. 2018). Accordingly, "[e]xcessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on the facts and circumstances of each particular case." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 728 (5th Cir. 2018); see also *Graham*, 490 U.S. at 396.

This is not an obvious case in which the entitlement to qualified immunity can be determined without further development of the facts. *See Hatcher v. Bement*, No. 3:14-CV-432-

---

[1] At the time of the filing, the charges were still pending.

M-BN, 2015 U.S. Dist. LEXIS 44074, 2015 WL 1511106, at *9 (N.D. Tex. Apr. 3, 2015). For the Court to determine the reasonableness of Officer Racca's actions, the Court must determine if Officer Racca's actions were reasonable in light of the circumstances, and "whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted." *Wood v. Moss*, 572 U.S. 744, 758 (2014). When significant fact questions remain as to both the plaintiff's and the defendant's knowledge, actions, and omissions, more discovery is required. *See Webb v. Livingston*, No. 6:13cv711, 2014 U.S. Dist. LEXIS 34081, 2014 WL 1049983, at *8 (E.D. Tex. Mar.14, 2014). Accordingly, Plaintiff's claims against Officer Racca in his individual capacity should survive the Motion to Dismiss.

### III.  RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss (doc. 18) be **GRANTED** in part and **DENIED** in part.  Specifically, the District Court should GRANT the Motion to Dismiss Plaintiff's claims against Officer Racca in his official capacity and DENY the Motion to Dismiss Plaintiff's claims against Officer Racca in his individual capacity.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 11th day of September, 2024.

_____
THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE